IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**LCC INTERNATIONAL, INC., n/k/a TECH MAHINDRA NETWORK SERVICES INTERNATIONAL, INC.,**

    **Petitioner,**

v.

**RICHARD TORGERSON, individually and on behalf of all others similarly situated,**

    **Respondents.**

Case No. 17-2508-DDC-TJJ

## MEMORANDUM AND ORDER

On July 28, 2017, petitioner LCC International, Inc. ("LCC")[1] filed a Petition to Vacate in the Eastern District of Virginia, seeking to vacate an arbitrator's Order denying LCC's Motion for Clause Construction Award. After the parties jointly stipulated to transfer LCC's Petition to the District of Kansas, the Eastern District of Virginia transferred the case to our court on September 1, 2017. Respondent Richard Torgerson (who is asserting Fair Labor Standards Act ("FLSA") claims on behalf of himself and all other similarly situated in arbitration against LCC) opposes LCC's Petition to Vacate. Mr. Torgerson asks the court to deny LCC's Petition to Vacate and dismiss this action.

After considering the parties' arguments, the court rejects LCC's assertion that the arbitrator exceeded his authority in his June 30, 2017 Order denying LCC's Motion for Clause

---

[1]  LCC represents that, on December 13, 2016, it changed its corporate name to Tech Mahindra Network Service International, Inc. In their briefs, the parties continue to refer to petitioner as LCC. LCC explains that it does so because Mr. Torgerson never worked for LCC after its name change. Also, Mr. Torgerson filed his arbitration demand against LCC. The court adopts the parties' convention, and this Memorandum and Order also refers to petitioner as LCC.

Construction Award (Doc. 13-1). The court thus denies LCC's Petition to Vacate and dismisses this action.[2]

## I. Factual Background

Mr. Torgerson worked for LCC as a Migration Analyst and Senior Migration Analyst at its office in Overland Park, Kansas. On February 3, 2016, Mr. Torgerson filed a lawsuit in the Western District of Missouri, on behalf of himself and others similarly situated, alleging that LCC had violated the FLSA by improperly classifying all LCC employees working in a Migration Analyst position as employees exempt from the FLSA's overtime requirements. Mr. Torgerson's suit seeks to recover unpaid overtime compensation under the FLSA on behalf of himself and other, similarly situated Migration Analysts.

LCC filed a motion asking the Western District of Missouri to dismiss the case based on improper venue. The Western District of Missouri agreed that venue was improper but refused to dismiss the case. Instead, on July 11, 2016, the Western District of Missouri transferred the action to our court. *See Torgerson v. LCC Int'l, Inc.*, No. 16-2495-DDC-TJJ (D. Kan. July 11, 2016), ECF 54.

As a condition of his employment with LCC, Mr. Torgerson signed an Employee Agreement ("Agreement"). Among other things, Mr. Torgerson agreed in the Agreement to

---

[2] Mr. Torgerson asserts that the court should treat LCC's Petition to Vacate as a Motion to Vacate. Mr. Torgerson argues that it was improper procedurally for LCC to file a new action seeking to vacate the arbitrator's Order. Instead, Mr. Torgerson contends, LCC should have filed a motion to vacate the arbitrator's decision in another action pending before our court: *Torgerson v. LCC Int'l, Inc.*, No. 16-2495-DDC-TJJ. LCC responds that this is a distinction without a difference. The court agrees with LCC. *See*, *e.g.*, *Farmers Nat'l Bank v. Van Kampen Merrit, Inc.*, No. 91 C 5653, 1992 WL 80516, at *1 (N.D. Ill. Apr. 13, 1992) (explaining that "[t]he fact that this motion came before the district court on the application (rather than the motion) . . . to vacate the arbitration award" did not affect the court's disposition because "'liberality of the . . . Federal Rules is such that an erroneous nomenclature does not prevent the court from recognizing the true nature of a motion'" and thus the court considered an application to vacate an arbitration award as a motion to vacate (quoting *Sacks v. Reynolds Sec., Inc.*, 593 F.2d 1234, 1239 (D.C. Cir. 1978))). Also, LCC has no objection to the court treating its Petition as a Motion to Vacate. The court thus considers LCC's Petition as a Motion to Vacate.

arbitrate certain disputes "in accordance with the then prevailing rules of the American Arbitration Association." Doc. 1-2 at 5.

Based on this Agreement, LCC filed a Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration. *See Torgerson v. LCC Int'l, Inc.*, No. 16-2495-DDC-TJJ (D. Kan. Apr. 4, 2016), ECF 28. On August 10, 2016, the court granted in part and denied in part defendants' Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration. *See Torgerson v. LCC Int'l, Inc.*, No. 16-2495-DDC-TJJ (D. Kan. Aug. 10, 2016), ECF 62. The court concluded that Mr. Torgerson had signed an employment agreement that requires him to arbitrate his FLSA claims. *Id.* at 5. The court thus granted defendants' request to stay the case and compelled the parties to proceed to arbitration. *Id.* at 6. Also, the court denied the portion of defendants' motion asking the court to decide whether the employment agreement permits collective arbitration because it determined that the arbitrator must decide that issue. *Id.* at 8. And, for the same reasons, the court declined to decide Mr. Torgerson's Motion for Conditional Certification of Class Claims Under § 216(b) of the FLSA without prejudice to their right to present this request to an arbitrator. *Id.*

Mr. Torgerson moved for reconsideration of the court's Order compelling the parties to arbitration. The court denied that motion on January 3, 2017. *See Torgerson v. LCC Int'l, Inc.*, No. 16-2495-DDC-TJJ (D. Kan. Jan. 3, 2017), ECF 69.

On January 17, 2017, Mr. Torgerson submitted a Demand for Arbitration to the American Arbitration Association ("AAA"). Mr. Torgerson's demand sought to assert a collective action on behalf of himself and others similarly situated. On June 30, 2017, the arbitrator issued an Order on Threshold Matters and on Respondent's Motion for Clause Construction Award. Doc. 13-1. In this Order, the arbitrator determined that the arbitration provisions in Mr. Torgerson's

Agreement were valid and enforceable and that Mr. Torgerson's FLSA claims fall within the scope of the Agreement's arbitration provisions. *Id.* at 7–8. The arbitrator also concluded that the Agreement's Forum Selection Clause was valid and enforceable, requiring arbitration to take place in Arlington, Virginia. *Id.* at 10. Finally, the arbitrator concluded that the Agreement authorizes Mr. Torgerson to proceed on a collective basis. *Id.* at 11–13. Thus, the arbitrator dismissed LCC's Motion for a Final Clause Construction Award dismissing the collective action allegations. *Id.* at 13. The arbitrator described his order as a "non-final decision" that "does not pertain to class action." *Id.* He also determined that the AAA rules do not require "a stay of these proceedings to permit a party to seek judicial review of this Order, since this Order is not a final class arbitration determination." *Id.* (first citing AAA Supplementary Rule for Class Actions 5(d); then citing *Jock v. Sterling Jewelers Inc.*, 188 F. Supp. 3d 320, 327 (S.D.N.Y. 2016)).

In response to the arbitrator's decision, LCC filed a Petition to Vacate the Arbitrator's Final Clause Construction Award in the Eastern District of Virginia.[3] Doc. 1. After the parties entered a Joint Stipulation to transfer LCC's Petition to the District of Kansas, the Eastern

---

[3]   During a telephone conference with the parties, LCC's counsel explained that it filed the Petition to Vacate in the Virginia district court because Section 10 of the Federal Arbitration Act ("FAA") provides that a party to the arbitration can apply for an order vacating an arbitration award in "the United States court in and for the district wherein the award was made." 9 U.S.C. § 10. Because the arbitration is pending in Arlington, Virginia, LCC filed its Petition to Vacate in the Eastern District of Virginia as Section 10 of the FAA authorizes.

The Supreme Court has held that §§ 9, 10, and 11 of the FAA are permissive (rather than restrictive) venue provisions and allow a party to bring a motion to confirm, vacate, or modify an arbitration award in any district court where venue is proper. *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 195 (2000). So, invoking § 10 of the FAA, LCC could file its Petition to Vacate in the Eastern District of Virginia. But LCC also was not required to file its Petition there. Because the statutes are permissive, the "authority under the FAA to confirm or vacate arbitration awards is not limited to the district court in the district where the award was made." *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 870 (10th Cir. 1999).

District of Virginia transferred the action to our court.[4]  Doc. 11.  Mr. Torgerson then filed a Memorandum in Opposition to LCC's Petition to Vacate.  Doc. 13.  And LCC filed a Reply.  Doc. 15.  The court considers the parties' competing arguments for and against vacating the arbitrator's award, below.

## II.    Legal Standard

The Federal Arbitration Act ("FAA") provides that courts may vacate an arbitrator's decision but "only in very unusual circumstances."  *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)).  "That limited judicial review . . . 'maintain[s] arbitration's essential virtue of resolving disputes straightaway.'"  *Id.* (quoting *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 588 (2008)).  Because "[i]f parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'"  *Id.* (quoting *Hall Street Assocs.*, 552 U.S. at 588).  And, "by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'"  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

Consistent with this governing standard, our Circuit has explained that "[j]udicial review of arbitration panel decisions is extremely limited[.]"  *Dominion Video Satellite, Inc. v. Echostar Satellite, LLC*, 430 F.3d 1269, 1275 (10th Cir. 2005).  The Circuit even has described it as "'among the narrowest known to law.'"  *Id.* (quoting *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001)).  The court must "afford maximum deference to the arbitrator's decision" because "[a]ny less deference would risk improperly substituting a judicial

---

[4]    Upon transfer, the Clerk docketed the action as a new case, assigning it Case No. 17-2508-DDC-TJJ and noting the related case, Case No. 16-2495-DDC-TJJ.

determination for the arbitrator's decision that the parties bargained for." *THI of N.M. at Vida Encantada, LLC v. Lovato*, 864 F.3d 1080, 1083, 1084 (10th Cir. 2017) (citations, internal quotation marks, and internal alternations omitted).

Section 10 of the FAA permits a federal district court to vacate an arbitration award in only four circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. Outside the four reasons enumerated in § 10, the Tenth Circuit also has recognized a "handful of judicially created reasons that a district court may rely on to vacate an arbitration award," including violation of public policy, manifest disregard of the law, and denial of a fundamentally fair hearing. *Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001); *see also THI of N.M.*, 864 F.3d at 1084 (recognizing that "[t]o supplement these statutory grounds, [the Tenth Circuit has] recognized a judicially created exception to the rule that even an erroneous interpretation or application of law by an arbitrator is not reversible" (citing *Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co.*, 119 F.3d 847, 849 (10th Cir. 1987))).

"Aside from these 'limited circumstances,' § 9 of the FAA requires courts to confirm arbitration awards." *Id.* (quoting *Denver & Rio Grande*, 119 F.3d at 849). "Errors in either the arbitrator's factual findings or his interpretation of the law (unless that interpretation shows a

6

manifest disregard of controlling law) do not justify review or reversal on the merits of the controversy." *Denver & Rio Grande*, 119 F.3d at 849 (first citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36–38 (1987); then citing *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1463 (10th Cir. 1995) (further citation omitted)).

The party seeking to vacate an arbitrator's award "bears a heavy burden." *Oxford Health Plans*, 569 U.S. at 569. "'It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error.'" *Id.* (quoting *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)). "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Id.* (quoting *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000)). "Only if 'the arbitrator act[s] outside the scope of his contractually delegated authority'—issuing an award that 'simply reflect[s] [his] own notions of [economic] justice' rather than 'draw[ing] its essence from the contract'—may a court overturn his determination." *Id.* (quoting *E. Associated Coal*, 531 U.S. at 62). The "sole question" for the court is "whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id.*

### III.   Analysis

LCC's Petition to Vacate asserts that the court must vacate the arbitrator's Order on Threshold Matters and on Respondent's Motion for Clause Construction Award for two reasons. First, LCC contends, the arbitrator exceeded his authority by ruling that the AAA Supplementary Rules of Class Arbitration do not apply. Second, LCC argues, the arbitrator exceeded his authority by ruling that the parties' arbitration agreement authorizes Mr. Torgerson to assert his FLSA claims on a collective basis. The court addresses each argument, in turn, below. In short,

7

the court finds neither argument persuasive.  LCC—after asking the court to compel the parties' dispute to arbitration—now asks the court to vacate the arbitrator's Order because it is unhappy with how the arbitrator has performed his task.  This is not a reason to vacate the arbitrator's Order under the highly-deferential standard of the FAA's section 10.  The court thus denies LCC's request that the court vacate the arbitrator's Order.

The court begins its analysis, however, by explaining why it has jurisdiction to decide this dispute.

### A. AAA Supplementary Rule 3 Authorizes Judicial Review of the Arbitrator's Order.

In *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, the Supreme Court authorized a party to an ongoing arbitration to invoke 9 U.S.C. § 10 to challenge an interlocutory arbitration award that had decided the availability of class arbitration.  559 U.S. at 670 & n.2; *see also Oxford Health Plans*, 569 U.S. at 568 (considering an appeal from a motion to vacate an arbitrator's interlocutory award that had determined that the parties' contract authorized class arbitration).  The Supreme Court held that the award was ripe for judicial review.  *Stolt-Nielsen*, 559 U.S. at 670 n.2.  The Court reasoned that "[t]he arbitration panel's award means that petitioners must now submit to class determination proceedings before arbitrators who, if petitioners are correct, have no authority to require class arbitration absent the parties' agreement to resolve their disputes on that basis."  *Id.* (citing AAA Supplementary Rule 4(a)).  The Court thus concluded that petitioners had demonstrated "sufficient hardship, and that their question is fit for our review at this time."  *Id.  See also W. Cty. Motor Co. v. Talley*, No. 4:10CV01698 AGF, 2011 WL 4478826, at *1 (E.D. Mo. Sept. 27, 2011) (holding that an arbitrator's Partial Final Clause Construction Award was "ripe for judicial review when issued" because holding otherwise "would mean that a respondent . . . might be forced to go through class arbitration

8

without first having the opportunity for judicial review of the arbitrator's decision that class arbitration was permitted by the arbitration agreement in question." (citing *Stolt-Nielsen*, 559 U.S. at 670 n.2).

The Eleventh Circuit applied this same reasoning in *DIRECTV, LLC v. Arndt*, 546 F. App'x 836, 838–39 (11th Cir. 2013).  There, like Mr. Torgerson here, the *DIRECTV* claimants filed a demand for collective or class arbitration with the AAA, alleging that DIRECTV had violated the FLSA by failing to pay them overtime wages. *Id.* at 838.  Also like Mr. Torgerson, the *DIRECTV* claimants sought to bring their claim on behalf of themselves and all other similarly situated employees. *Id.*  After the arbitrator issued an order finding that the parties' agreement allowed the claimants to assert their FLSA claims on a collective basis, DIRECTV filed a petition in the district court seeking to vacate the arbitrator's award under 9 U.S.C. § 10(a)(4). *Id.*  DIRECTV argued—as does LCC here—that the arbitrator "had exceeded her authority in finding the parties consented to collective arbitration." *Id.*  Applying *Stolt-Nielsen*, the Eleventh Circuit held it had jurisdiction to consider DIRECTV's petition to vacate the arbitrator's award. *Id.* at 839.  It explained that the claimant's arguments "that the district court lacked subject matter jurisdiction because the petition to vacate the arbitrator's clause construction award was an interim order simply echo the arguments rejected by the majority in *Stolt-Nielsen*," and, the Circuit reasoned, it "need not revisit an issue squarely resolved by the Supreme Court." *Id.*  Also, other district courts have concluded that the "limited circumstances justifying review for a Rule 23 class arbitration award" apply with equal force to "FLSA collective actions." *Int'l Bancshares Corp. v. Lopez*, 57 F. Supp. 3d 784, 789 (S.D. Tex. 2014); *see also In re Cintas Corp. Overtime Pay Arbitration Litig.*, No. C 06-1781 SBA, 2007 WL

9

137149, at *1 n.1 (N.D. Cal. Jan. 12, 2007) (explaining in an FLSA case that the AAA Rules apply "in a demand for class *or collective* arbitration") (emphasis added).

The court has found no Tenth Circuit case squarely addressing whether a party to an ongoing arbitration may move the court to vacate an arbitrator's award concluding that an arbitration agreement permits a claimant to assert FLSA claims on a collective basis.  But, LCC asserts, the court has jurisdiction to decide this issue based on the Supreme Court's holding in *Stolt-Nielsen* and the Eleventh Circuit's decision in *DIRECTV*.

LCC also asserts that Rule 3 of the AAA Supplementary Rules for Class Arbitrations ("Supplementary Rules") specifically allows it to seek an order from the court vacating the arbitrator's decision.  Supplementary Rule 3 provides:

> Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award").  The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award.

Supplementary Rule 3, AAA Supplementary Rules for Class Arbitrations, https://www.adr.org/sites/default/files/Supplementary%20Rules%20for%20Class%20Arbitrations.pdf (last visited Jan. 18, 2018).

So, Supplementary Rule 3 allows for interlocutory judicial review of an arbitrator's decision finding, as a threshold matter, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award"). Supplementary Rule 3.  *But see Stolt-Nielsen*, 559 U.S. at 688 & 692 n.7 (Ginsburg, J., dissenting) (criticizing the majority for "addressing an issue not ripe for judicial review" and noting that the parties' agreement to incorporate the Supplementary Rules could not "expand

10

judicial review available under the FAA" (citation and internal quotation marks omitted));
*Dealer Computer Servs., Inc. v. Dub Herring Ford*, 547 F.3d 558, 561–62 (6th Cir. 2008) (holding that an arbitrator's decision that a contract did not preclude class arbitration was not ripe for judicial review because the arbitrator made no finding that class arbitration could actually proceed).

The Supplementary Rules also provide for interlocutory judicial review at a later stage—if the arbitrator determines that the arbitration should indeed proceed as a class arbitration (the "Class Determination Award").  See Supplementary Rule 5(d) (requiring the arbitrator to "stay all proceedings following the issuance of a Class Determination Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or vacate the Class Determination Award.").

The Supplementary Rules provide that they "shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the American Arbitration Association ('AAA')."  Rule 1(a).  Here, the parties expressly agreed to arbitration "in accordance with the then prevailing rules of the American Arbitration Association."  Doc. 1-2 at 5.  Similarly, the parties in *Stolt-Nielsen* expressly agreed that the AAA's Supplementary Rules for Class Arbitrations would govern their arbitration.  *Stolt-Nielsen*, 559 U.S. at 668; *see also Oxford Health Plans*, 569 U.S. at 566 (reciting that the parties' agreement required them to submit certain disputes to arbitration "pursuant to the rules of the American Arbitration Association with one arbitrator"); *DIRECTV*, 546 F. App'x at 839 (explaining that the parties had submitted their dispute to arbitration under the AAA's Employment Rules).

While the court can find no Tenth Circuit cases governing this issue, the court predicts that our Circuit, applying the Supreme Court's reasoning in *Stolt-Nielsen* and *Oxford Health*

*Plans* and the Eleventh Circuit's holding in *DIRECTV*, would conclude that a district court has jurisdiction to review an arbitrator's order holding that the parties' arbitration agreement allows a claimant to assert FLSA claims on a collective basis.

Mr. Torgerson sharply disagrees. Relying on a recent decision from the Southern District of New York, he asserts that the court lacks jurisdiction to consider the arbitrator's Order because it involves an FLSA collective action—not a Rule 23 class action. *See generally Jock v. Sterling Jewelers, Inc.*, 188 F. Supp. 3d 320 (S.D.N.Y. 2016). *Jock* held that the district court had no jurisdiction to review a motion to vacate an arbitrator's ruling conditionally certifying a collective action under the Equal Pay Act ("EPA") (a statute that incorporates the enforcement provisions of the FLSA) because it was not a final arbitration award. *Id.* at 325. *Jock* recognized that other courts have approved judicial review of an arbitrator's rulings on *class* certification under the AAA Supplementary Rules. *Id.* at 326 (collecting cases). But *Jock* explained, "this is largely because AAA Supplementary Rule 5(d) expressly provides for such an appeal, similarly to Fed. R. Civ. P. 23(f)." *Id.* at 327. In contrast, "[t]he AAA Supplementary Rules governing class arbitrations make no mention of conditional certification of a collective action." *Id.* So, *Jock* reasoned, "while [the AAA Supplementary Rules] strongly suggest a basis for treating an arbitrator's *class* determination awards as subject to judicial review, there exists no parallel provision in the AAA Supplementary Rules *for conditional certification of collective actions under the FLSA (or the EPA)*." *Id.* at 327–28 (emphasis added). And so, *Jock* concluded, the court lacked jurisdiction to review the arbitrator's order on conditional collective action certification. *Id.* at 328.

On appeal, the Second Circuit dismissed the case in a Summary Order. *Jock v. Sterling Jewelers Inc.*, 691 F. App'x 665, 666 (2d Cir. 2017). The Second Circuit explained that district

12

court's order had "neither confirmed nor denied confirmation of an award or partial award, but instead held that the district court lacked jurisdiction to consider an interim decision of the arbitrator." *Id.* Thus, the Second Circuit held, it lacked appellate jurisdiction to consider the issue. *Id.* Importantly, the Second Circuit's Summary Order never addressed the merits of the issue whether a district court has jurisdiction to review an arbitrator's decision conditionally certifying a collective action. Instead, the Summary Order was a jurisdictional dismissal.

*Jock* is the only case that Mr. Torgerson cites that holds a district court lacks jurisdiction to review an arbitrator's order conditionally certifying a collective action. But that's not the issue here. LCC asks the court to review an arbitrator's Order on the threshold issue whether the parties' agreement allows Mr. Torgerson to assert FLSA claims on a collective basis. The majority of cases have determined that a district court has jurisdiction to review such an order. *See*, *e.g.*, *DIRECTV, LLC v. Arndt*, 546 F. App'x 836, 839 (11th Cir. 2013) (holding that jurisdiction existed for judicial review of an arbitrator's order finding that the parties' agreements provided for collective arbitration of FLSA claims); *Int'l Bancshares Corp. v. Lopez*, 57 F. Supp. 3d 784, 789 (S.D. Tex. 2014) (recognizing that "although there are meaningful differences between Rule 23 class actions and FLSA collective actions, the limited circumstances justifying review for a Rule 23 class arbitration award are also applicable to FLSA collective actions" and so the district court had jurisdiction to review a Clause Construction Award that had authorized a claimant proceed with collective action arbitration). The court's own research has located no cases holding otherwise, *i.e.*, permitting judicial review of a clause construction award.

Also, while *Jock* held that the district court lacked jurisdiction to vacate an arbitrator's ruling on conditional collective action certification, *Jock* acknowledged that "courts (including

13

[the Southern District of New York]) have reviewed arbitrators' 'clause construction awards,' where, *e.g.*, they are threshold rulings determining whether the parties' arbitration agreement even permits class arbitration." *Jock*, 188 F. Supp. 3d at 326 (citing *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 671 (2010); *Jock v. Sterling Jewelers, Inc.*, 677 F. Supp. 2d 661, 665 (S.D.N.Y. 2009)). Thus, *Jock* cited an earlier opinion in that very same case where the same district court had determined that it could review the arbitrator's threshold ruling that the arbitration agreement did not prohibit class arbitration. *Jock*, 677 F. Supp. 2d at 665. That is the precise issue presented here. And the court has found no case law holding that a district court lacks jurisdiction to decide this issue. To the contrary, and as noted above, others courts have held specifically that jurisdiction exists for a district court to review such an order. So, the court—predicting that the Tenth Circuit would do the same—follows those authorities and concludes that it has jurisdiction to consider LCC's request to vacate the arbitrator's Order.

> **B. The Arbitrator Never Held that the AAA Supplementary Rules Don't Apply, and thus the Arbitrator Never Exceeded His Authority.**

Turning now to LCC's arguments supporting its request for the court to vacate the arbitrator's order, LCC first contends that the arbitrator exceeded his authority by holding that the AAA Supplementary Rules do not apply to the parties' arbitration. Although the Arbitrator never made an explicit finding that the AAA Supplementary Rules do not apply, he concluded that AAA Supplementary Rule 5(d) did not require a stay of the arbitration proceedings to permit a party to seek judicial review of the order because the Order was not a final class arbitration determination. Indeed, AAA Supplementary Rule 5(d) requires that an "arbitrator shall stay all proceedings following the issuance of the Class Determination Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the

14

Class Determination Award." Rule 5(d), AAA Supplementary Rules for Class Arbitrations, https://www.adr.org/sites/default/files/Supplementary%20Rules%20for%20Class%20Arbitrations.pdf (last visited Jan. 18, 2018). A "Class Determination Award" must "address each of the matters set forth in Rule 4" which governs class certification. Rule 5(a). Because the arbitrator's Order was not a Class Determination Award deciding whether to certify a class, the arbitrator correctly explained that the parties could not invoke Rule 5(d) to seek judicial review of the Order.

The arbitrator also concluded that his Order was a "non-final decision" because the "AAA rules do not provide for the issuance of a 'final' award pertaining to whether an arbitration may proceed on an opt-in collective basis under the FLSA, as opposed to an opt-out 'class action.'" Doc. 13-1 at 13 (citing *Jock v. Sterling Jewelers, Inc.*, 188 F. Supp. 3d 320 (S.D.N.Y. 2016)). So, the arbitrator appeared to follow the reasoning of *Jock*. As explained above, *Jock* held that a district court lacks jurisdiction to review an arbitrator's order conditionally certifying a collective action. *Jock*, 188 F. Supp. 3d at 327–28. *Jock* held that while the AAA Supplementary Rules may provide for judicial review of an arbitrator's *class* determination awards, the AAA rules contain no similar rule governing conditional *collective* action certification under the FLSA. *Id.* Applying *Jock*'s reasoning to this case, the arbitrator concluded that the Order was not subject to judicial review because the AAA rules include no provision allowing a party to seek judicial review of an arbitration decision allowing a claimant to proceed with arbitration of FLSA claims on a collective basis. Doc. 13-1 at 13. Instead, the AAA rules provide just for judicial review of final class arbitration determinations. *Id.*

As explained above, *Jock* is the only case the court has located that has reached this conclusion. In contrast, other courts—including *Jock* in an earlier opinion—have allowed

15

judicial review of an arbitrator's decision finding that an agreement authorizes a claimant to proceed on a collective basis. But, the arbitrator's decision to apply *Jock*—instead of other authorities that have reached a different conclusion—is not a reason for the court to find that the arbitrator exceeded his authority under 9 U.S.C. § 10(a)(4).

The Supreme Court has explained that the question under § 10(a)(4) is "whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided the issue." *Stolt-Nielsen*, 559 U.S. at 694 (citation and internal quotation marks omitted). And section 10(a)(4) "permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated task . . . , not when he performed that task poorly." *Oxford Health Plans*, 569 U.S. at 572. Under this provision, "[i]t is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." *Stolt-Nielsen*, 559 U.S. at 671. The court may vacate the award "[o]nly if the arbitrator acts outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract—may a court overturn his determination." *Oxford Health Plans*, 569 U.S. at 569 (citations and internal quotation marks omitted). Instead, "the sole question for [the Court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id.*

LCC's assertion that the arbitrator erred by determining that his Order was a non-final order not subject to judicial review is essentially a claim that the arbitrator did not correctly interpret the parties' contract. And such an error—even what amounts to a serious error—will not provide sufficient reason to vacate an arbitration award. *Stolt-Nielsen*, 559 U.S. at 671. In sum, the court cannot find that the arbitrator acted outside the scope of his delegated authority

when he relied on the *Jock* case to conclude that his Order was a non-final order not subject to judicial review.

This conclusion is consistent with the guidance given by the Tenth Circuit. This guidance recognizes that, "once a court independently determines the parties agree to arbitrate an issue, it should give 'extreme deference' to an arbitrator's decision regarding the scope of that issue." *Burlington N. & Santa Fe Ry. Co. v. Pub. Serv. Co. of Okla.*, 636 F.3d 562, 568 (10th Cir. 2010) (quoting *Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001)). And, "the arbitrator's interpretation of the scope of his powers is entitled to the same level of deference as his determination on the merits." *Id.* (citation and internal quotation marks omitted). Here, the arbitrator's decision that he had the authority to enter a non-final order not subject to judicial review "is entitled to the same 'extreme deference' as its determinations on the merits." *Id.* (quoting *Sheldon*, 269 F.3d at 1206). So even though the court determines that it has jurisdiction to consider this issue, it need not vacate the arbitrator's decision concluding that his Order was non-final decision not subject to interlocutory review.

LCC fails to carry its "heavy burden" to show that the arbitrator exceeded his authority when deciding that his Order was a non-final decision.

### C. The Arbitrator Never Exceeded His Authority by Denying LCC's Motion for Clause Construction Award.

LCC next argues that the arbitrator exceeded his authority by concluding that the parties' Agreement authorizes Mr. Torgerson to assert his FLSA claims on a collective basis. LCC contends that the Supreme Court's decision in *Stolt-Nielsen* requires a different result. In *Stolt-Nielsen*, the parties had stipulated that their arbitration clause was silent about the availability of class arbitration. 559 U.S. at 668. Because the Agreement was silent, the Supreme Court held

17

that an arbitrator could not compel the parties to submit to class arbitration because no contractual basis exists for concluding that either party had agreed to do so. *Id.* at 684.

LCC asserts that, like *Stolt-Nielsen*, the parties here agree that the Agreement is silent about the availability of collective arbitration. Thus, LCC contends, the arbitrator erred by construing the Agreement as allowing a party to proceed with collective arbitration. To make this argument, LCC extrapolates arguments that Mr. Torgerson made to the arbitrator when he asserted that the parties' Agreement did not require arbitration of FLSA claims. *See* Doc. 15 at 9. There, Mr. Torgerson was arguing that his claims belonged in court, not arbitration. LCC asserts that by making such arguments, Mr. Torgerson agreed that the parties' Agreement is silent about collective arbitration. This agreement, LCC argues, required the arbitrator to follow *Stolt-Nielsen* and hold that the Agreement prohibits collective arbitration of FLSA claims. The court disagrees.

Unlike *Stolt-Nielsen*, the parties here never "entered into an unusual stipulation that they had never reached an agreement on arbitration." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 571 (2013). Instead, the parties dispute the meaning of their contract. See Doc. 13-1 at 5–6 (summarizing, in the arbitrator's Order, Mr. Torgerson's arguments as asserting that the parties' Agreement authorizes collective arbitration). So the arbitrator here was tasked with construing the parties' Agreement to determine if it authorizes collective arbitration. This situation is in "stark" contrast with *Stolt-Nielsen* where "the arbitrators did not construe the parties' contract, and did not identify any agreement authorizing class proceedings." *Oxford Health Plans*, 569 U.S. at 571. "So in setting aside the arbitrators' decision, [*Stolt-Nielsen*] found not that they had misinterpreted the contract, but that they had abandoned their interpretive role." *Id.*

18

That's not what happened here. To the contrary, the arbitrator explicitly acknowledged that he was interpreting the Agreements' arbitration clause as allowing "the right to proceed as a collective arbitration." Doc. 13-1 at 7; *see also id.* at 11 (discussing the "proper interpretation" of the clause). The arbitrator then quoted specific language from the Agreement, recognizing that that the provisions include "very broad reference to any controversy or claim." *Id.* at 12. And, citing the Supreme Court's decision in *Oxford Health Plans*, the arbitrator concluded that the plain language of the Agreement allowed Mr. Torgerson to assert FLSA claims on a collective basis. *Id.*

As the Supreme Court has explained, section 10(a)(4) of the FAA allows a district court to vacate an arbitrator's decision "only when the arbitrator strayed from his delegated task of interpreting a contract, not when he performed that task poorly." *Oxford Health Plans*, 569 U.S. at 572. Otherwise, if the arbitrator is "even arguably construing or applying the contract," his decision must stand "regardless of a court's view of its (de)merits." *Id.* at 569 (citations and internal quotation marks omitted). "The arbitrator's construction holds, however good, bad, or ugly." *Id.* at 573.

"Any less deference would risk improperly substitut[ing] a judicial determination for the arbitrator's decision that the parties bargained for." *THI of N.M. at Vida Encantada, LLC v. Lovato*, 864 F.3d 1080, 1083, 1084 (10th Cir. 2017) (citations and internal quotation marks omitted). "It would also create a system in which" arbitration would become something of a try-out on the road, and thus "'merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Id.* (quoting *Oxford Health Plans*, 569 U.S. at 568–69) (further citation and internal quotation marks omitted)).

19

The arbitrator's decision here shows that he interpreted the plain language of the parties' Agreement to conclude that it authorizes collective arbitration. The arbitrator never "strayed from his delegated task," and thus the court has no reason to vacate his decision. *Oxford Health Plans*, 569 U.S. at 572. LCC's criticisms of the arbitrator's decision simply address how well he performed his task of interpreting the Agreement. But the court cannot vacate a decision constructing an arbitration agreement "however good, bad, or ugly." *Id.* at 573. The court thus denies LCC's request that the court vacate the arbitrator's decision.

## IV. Conclusion

Although the court concludes that it has jurisdiction to consider this interlocutory appeal of an arbitrator's Order, the court finds that LCC has failed to shoulder its heavy burden of establishing that the arbitrator exceeded his authority. The court thus rejects LCC's request for an order vacating the arbitrator's Order under the highly deferential standard of 9 U.S.C. § 10(a)(4). Consequently, the court denies LCC's Petition to Vacate and dismisses this action.

**IT IS THEREFORE ORDERED THAT** petitioner LCC International, Inc. ("LCC")'s Petition to Vacate (Doc. 1) is denied.

**IT IS SO ORDERED.**

**Dated this 25th day of January, 2018, at Topeka, Kansas.**

            **s/ Daniel D. Crabtree**
            **Daniel D. Crabtree**
            **United States District Judge**